**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Francisco Javier Felix, | No. CV-19-01885-PHX-MTL |
| Petitioner, | **ORDER** |
| v. | |
| Attorney General of the State of Arizona, et al., | |
| Respondents. | |

Before the Court is Magistrate Judge Michael T. Morrissey's Report and Recommendation ("R & R") (Doc. 26), recommending that Francisco Javier Felix's Petition for Writ of Habeas Corpus (the "Petition") be denied and dismissed with prejudice. Petitioner filed objections (Doc. 27), and Respondents replied to those objections (Doc. 28). For the reasons below, the Court overrules those objections and adopts the R & R in its entirety.

**I.  LEGAL STANDARD**

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). But district courts are not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). "[T]he district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). This de novo review requirement applies only to "the portions of the [Magistrate

Judge's] recommendations to which the parties object." *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1032 (9th Cir. 2009). Such objections must be "specific." Fed. R. Civ. P. 72(b)(2).

The petition in this case was filed under 28 U.S.C. § 2254 because Petitioner is incarcerated based on a state conviction. This Court must deny the petition as to any claims that state courts have adjudicated on the merits unless "a state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law," or was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(1)–(2). An unreasonable application of law must be "objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (internal quotation marks and citation omitted). A petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 419–20 (citation omitted). "When applying these standards, the federal court should review the 'last reasoned decision' by a state court . . . ." *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). Additionally, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

## II. BACKGROUND

The R & R recounts the factual and procedural history of this case at pages 2–4. (Doc. 26 at 2–4.) Petitioner objects to the Magistrate's reliance on the Court of Appeals' "recounting of the facts . . . without further investigation." (Doc. 27 at 2.) Petitioner asserts that this Court must conduct an independent investigation into "these supposed facts" based on his arguments. (*Id.*) But the appellate court's stated facts are entitled to a presumption of correctness. *See* 28 U.S.C. § 2254 (e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). As Petitioner has not provided clear and convincing evidence to rebut the presumption of

correctness of the facts derived from the appellate court record, this objection is overruled.

In brief, the history of Petitioner's case is as follows:

Petitioner was convicted of ten counts of attempted second-degree murder (including one against a minor), ten counts of aggravated assault with a deadly weapon, one count of assisting a criminal street gang, and one count of endangerment. (*Id.* at 3.) Petitioner timely filed a direct appeal. (*Id.*, Ex. O at 192.) The Court of Appeals affirmed in part and vacated in part, finding fundamental, prejudicial error in the superior court's jury instruction about the lesser-included offense of attempted second-degree murder. (Doc. 16-1 at 189, 192.) The Court vacated Petitioner's convictions for attempted second-degree murder and remanded for a new trial but affirmed all of Petitioner's other convictions and sentences. (*Id.* at 204.) The Supreme Court of Arizona denied Petitioner's petition for review. (Doc. 5 at 113.) Subsequently, the State filed a Motion to Dismiss counts one through ten of Petitioner's sentence (the attempted murder charges). (Doc. 16-1, Ex. P.)

While his direct appeal was pending, Petitioner filed a Notice of Post-Conviction Relief ("PCR"). (*Id.* at 114.) Petitioner filed a *pro se* PCR petition and raised sixteen grounds for relief—the same grounds that he raises here. (Doc. 16-2, Ex. R at 2–42.) On September 19, 2017, the PCR court dismissed the PCR petition on its merits. (Doc. 16-3, Ex. U at 45–48.) From that point, Petitioner had 30 days to file a petition for review in the Arizona Court of Appeals. *See* Ariz. R. Crim. P. 32.16(a)(1) ("No later than 30 days after the entry of the trial court's final decision on a petition or a motion for rehearing, or the dismissal of a notice, an aggrieved party may petition the appropriate appellate court for review of the decision."). Petitioner moved for a 60-day extension of that deadline (doc. 10 at 4), but the PCR Court denied his motion. (Doc. 9-1 at 10.) Petitioner did not file a timely application for review in the Arizona Court of Appeals.

Subsequently, thirty-six days after the deadline, Petitioner did file a petition for review in the Arizona Court of Appeals, (Doc 9-1 at 12), which the court dismissed as untimely. (*Id.* at 14–15.) The Petitioner filed a Motion for reconsideration, which the

Court also denied. (Doc. 9-1 at 12.) Petitioner next filed a motion with the PCR Court seeking permission to file an untimely petition for review with the Arizona Court of Appeals. (Doc. 10 at 10–14.) The Superior Court never issued an order on that motion. (*See* Doc. 26 at 11.) On April 20, 2018, Petitioner petitioned the Arizona Supreme Court for review. (Doc. 9-1 at 24–26.) On November 20, 2018, the Arizona Supreme Court denied that petition. (*Id.*).

Then, on March 21, 2019, Petitioner filed a habeas petition in this Court. (Doc. 1.) Petitioner re-filed an amended habeas petition on May 9, 2019 and raises 18 grounds for relief. (*See* Doc. 5.)

**Ground 1:** Newly discovered evidence (Fourteenth Amendment violation)

**Ground 2:** Illegal police activities (Fifth, Sixth, and Fourteenth Amendment violations)

**Ground 3:** Insufficient indictment/lack of jurisdiction (Fifth, Sixth, and Fourteenth Amendment violations)

**Ground 4:** Insufficient indictment/ "multiplicitous" (Fifth, Sixth, and Fourteenth Amendment violations)

**Ground 5:** Impermissible amendment/variance to verdict (Fifth, Sixth, and Fourteenth Amendment violations)

**Ground 6:** Unlawful sentence/double jeopardy (Fifth Amendment violation).

**Ground 7:** Unlawful enhancement of Sentence/double jeopardy (Fifth Amendment violation)

**Ground 8:** Prosecutorial misconduct (Fourth, Fifth, Sixth, and Fourteenth Amendment violations)

**Ground 9:** Prosecutorial misconduct/unconstitutional use of perjured testimony during grand jury proceedings (Fifth, Sixth, and Fourteenth Amendment violations).

**Ground 10:** Prosecutorial misconduct/unconstitutional use of perjured testimony during trial (Fifth, Sixth, and Fourteenth Amendment violations)

**Ground 11:** Tainted jury pool (Fifth, Sixth, and Fourteenth Amendment violations)

**Ground 12:** Donald violation (Sixth Amendment violation)

**Ground 13:** Brady violation (Fifth, Sixth, and Fourteenth Amendment violations)

**Ground 14:** Ineffective assistance of counsel (Fourth, Fifth, Sixth, and Fourteenth Amendment violations)

**Ground 15:** Abuse of discretion (Fifth, Sixth, and Fourteenth Amendment violations)

**Ground 16:** Insufficient evidence (Fifth, Sixth, and Fourteenth Amendment violations)

**Ground 17:** Erroneous jury instruction (Fifth, Sixth, and Fourteenth Amendment violations)

**Ground 18:** Charge of aggravated assault was not a dangerous crime against children (Fifth, Sixth, Eighth, and Fourteenth Amendment violations)

(Doc. 5, Doc. 6 at 2–3).

## II.     TIMELINESS

The R & R recommends finding 214 days of equitable tolling for the period from April 20 to November 20, 2018, the time during which Petitioner's petition was pending before the Arizona Supreme Court. (Doc. 26 at 10–11.) The R & R finds that equitable tolling is warranted due to Petitioner's diligence in spite of the "legal limbo" left by the Superior Court's failure to rule. (*Id.* at 10.) Petitioner objects that he "cannot be denied as untimely because he was not untimely," and "the court still recommends in its conclusion that petitioner be denied as untimely." (Doc. 27 at 2.) But the R & R recommended a finding that the Petitioner *timely* filed the application by thirty-one days based on the application of equitable tolling. (Doc. 26 at 12.) Respondents do not respond nor object to the application of equitable tolling. (*See* Doc. 28.) Therefore, the Court overrules this objection and finds that the petition is timely.

///

### III. PETITIONER'S OBJECTIONS

#### A. Grounds 16 & 18: Insufficient Evidence

The R & R concludes that there was sufficient evidence to find Petitioner guilty on the aggravated assault charges, such as the testimony of Petitioner's then-girlfriend, her mother, a friend (Michael Villalobos), a neighbor who was awoken to gunshots, and a detective who recovered shell casing from the scene. (Doc. 26 at 15–16.) Petitioner challenges the R & R's findings on his charges of Dangerous Crimes Against Children and Aggravated Assault; Assisting a Criminal Street Gang; and Aggravated Assault on J.V.

The Arizona Court of Appeals squarely rejected Felix's insufficient evidence claim. *State v. Felix*, 237 Ariz. 280, 289–90, ¶¶ 31–35 (Ct. App. 2015) ("Sufficient evidence supports the jury's finding that Felix's aggravated assault of J.V. is a dangerous crime against children."). Petitioner fails to show that the Arizona Court of Appeals decision is contrary to, or an unreasonable application of, federal law. *See Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (a sufficiency-of-the-evidence claim must be rejected unless "no rational trier of fact could have found proof of guilt beyond a reasonable doubt"); *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (a federal court may overturn a state court decision rejecting a sufficiency-of-the-evidence challenge "only if the state court decision was 'objectively unreasonable'"); *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011) (explaining that under *Jackson* and the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "there is a double dose of deference that can rarely be surmounted").

#### i. Dangerous Crimes Against Children and Aggravated Assault

As explained in the R & R, "[e]vidence is sufficient to support a conviction so long as 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Cavazos v. Smith*, 565 U.S. 1, 7 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). The Court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any [. . .] conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos*, 565 U.S. at 7.

Petitioner does not challenge this standard of review. (*See* Doc. 27 at 3–4.) Rather, Petitioner objects to the R & R on the grounds that "[t]he Court refuses to see the fact that Petitioner has proven the unreliability of the State's 'witnesses'; and without physical evidence, eyewitness testimony placing him at the scene, or a confession, the evidence against him was insufficient as a matter of all on all counts." (Doc. 27 at 2.) Petitioner also argues that he has "proven perjury" of several witnesses via conflicting statements. (*Id.* at 3.) As to the Dangerous Crime Against Children charge, Petitioner next argues that "[n]o evidence exist[s] to even indicate that petitioner knew the child was home at the time of the shooting." (*Id.*) Petitioner contends that the "Constitution of the Untied States guarantees [him] a fair trial and to be convicted on sufficient evidence." (*Id.* at 4.)

As the R & R notes, sufficient evidence supports the jury's conviction. (Doc. 26 at 14–19.) As to Petitioner's claims that the evidence is insufficient because the State lacked direct evidence, Arizona law does not require direct evidence to sustain a conviction. *See Felix*, 237 Ariz. at 289, ¶ 32 ("Either direct or circumstantial evidence is sufficient to prove that a defendant placed a victim in reasonable apprehension of immediate physical injury.") (internal quotation omitted). Petitioner does not dispute that he went to a party at the victims' house that night, he was aware that J.V. lived at the house with Steve and Elizabeth, and he was aware that J.V. lived in the house on the night that bullets were shot into the house indiscriminately. *Felix*, 237 Ariz. at 290, ¶ 35. Likewise, Petitioner does not challenge that several spent shell casings from an assault rifle were recovered from the house, and there were several bullet holes on Elizabeth's house. (Doc. 26 at 16, 16-4 at 475–82, Ex. FF at 504–05.) He also does not contest that Elizabeth testifed that J.V. "started crying" when shots were fired, so Elizabeth crouched over J.V. and covered her. *Felix*, 237 Ariz. at 290, ¶ 35.

Moreover, though there were discrepancies in some testimony of witnesses regarding the color, make and model of the vehicle that the shooters arrived in, the jury was made aware of such issues of credibility and chose to resolve them in the State's favor. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995) (noting the credibility of witnesses is

generally beyond the Court's review of the sufficiency of the evidence). The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires a state prisoner to "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Burt v. Titlow*, 571 U.S. 12, 19–20 (2013) (internal quotations and alterations omitted). Based on the record, Petitioner has not met, and cannot meet, this burden to prove that there was insufficient evidence to convict him of dangerous crimes against children, accomplice to the shooting, and aggravated assault.

### ii. Assisting Criminal Street Gang

As to Count 11, assisting a criminal street gang, Petitioner argues that the "court has not actually viewed the drawings and photos in question, because those exhibits clearly showed a lack of any indicators that Petitioner belonged to a gang." (Doc. 27 at 6.) Petitioner also argues that the R & R "leaves no room for the possibility that [two people's] issues could be personal" and not gang-motivated." (Doc. 27 at 6.) But the standard of review here is that the evidence is viewed in the light most favorable to the State, not Petitioner. *Cavazos v. Smith*, 565 U.S. 1, 7 (2011). Based on that standard of review, it is reasonable that Petitioner's drawings and photographs could be interpreted to show gang affiliation, especially when coupled with the other evidence produced at trial—including direct testimony that the assault on Petitioner was gang motivated. (*See* Doc. 26 at 17, *see also* Docs. 16-4, Ex. EE at 452–53, Ex. Y at 50–51). From this evidence, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Cavazos*, 565 U.S. at 7.

### iii. Aggravated Assault of J.V.

As to Count 21, aggravated assault of J.V., Petitioner argues that "knowing a person has given birth to a child, and knowing that a child is present during a party in which a crime is to occur, are two completely different levels of information and require different levels of evidence." (Doc. 27 at 7.) Petitioner argues that "overwhelming evidence prov[es] Petitioner could not have known the child was home." Once again, this Court's

standard of review asks whether the state court's determination was an unreasonable application of or contrary to federal law, and we view the facts in the light most favorable to the State. *Cavazos*, 565 U.S. at 7. It is not an unreasonable view, based on Elizabeth's testimony recounting J.V. crying, and Petitioner's knowledge that J.V. lived in the house, that "J.V. was frightened by the gunshots" and thereby being placed "in reasonable apprehension of physical harm when she heard them." *Felix*, 237 Ariz. at 289, ¶ 32.

The Court agrees with the R & R that Petitioner has failed to prove that the State court's denial of relief on the sufficiency of evidence grounds was objectively unreasonable, and thus, Petitioner's objections as to Grounds 16 and 18 are overruled.

**B.    Ground 1**

Petitioner next objects to the R & R's denial of his newly discovered evidence. (Doc. 27 at 7.) Petitioner contends that a previously unknown witness contacted his sentencing counsel and is from a rival gang and would be willing to testify that Petitioner was "in the wrong place at the wrong time." (*Id.* at 7–8.) The R & R rejected this new evidence because Petitioner failed to demonstrate the reliability or credibility of the witness's statements; he included no affidavit or other indication of the veracity of his statements. (Doc. 26 at 20.) Moreover, Petitioner failed to prove that "it is not reasonably probable that the jury would not have convicted Petitioner had it been presented with [the witness's] testimony in light of all of the other evidence and testimony that was presented at trial."

"Short proof of actual innocence, claims solely based on new evidence are generally not cognizable on habeas." *United States v. Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010). A claim of newly discovered evidence to support a habeas petition must be based on an independent constitutional violation. *Id.*, citing *Herrera v. Collins*, 506 U.S. 390, 400 ("[N]ewly discovered evidence . . . alleged in a habeas application . . . must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."). Besides, even construing Petitioner's objection under Rule 33, Petitioner cannot

prevail because Petitioner's objection is untimely. *See* Fed. R. Crim. P. 33(b) (establishing a 3-year limit for any motion for a new trial based on newly discovered evidence).

Petitioner's alleged newly discovered evidence does not support an independent constitutional violation. Petitioner does not even submit affirmative evidence showing actual innocence; as stated in the R & R, Petitioner submits nothing to show that the new proposed testimony is reliable or that this witness would even be willing or available to testify. *Jones*, 763 F.3d at 1247. Petitioner argues that because he is incarcerated, he has no way of contacting the witness, but "the simple fact that he would be willing to contact Petitioner's sentencing counsel is proof he would be willing to testify." (Doc. 27 at 8.)

While the Court is sympathetic to Petitioner's position, the proposed evidence does not reach the necessary threshold to show that Petitioner was actually innocent of the crimes he was convicted of and thus fails to warrant habeas relief. "[T]he threshold for [proving] a freestanding claim of innocence would have to be "extraordinarily high" and "truly persuasive." *Carriger v. Stewart,* 132 F.3d 463, 476 (9th Cir. 1997) (quoting *Herrera v. Collins*, 506 U.S. 390, 417 (1993)). Post-conviction evidence serving only to "undercut the evidence presented at trial" does not pass the threshold. *Id.* at 477; see also *Spivey v. Rocha*, 194 F.3d 971, 979 (9th Cir. 1999) (habeas relief is unavailable where "the totality of the new evidence does not undermine the structure of the prosecution's case"). Petitioner's new witness seeks only to undercut the evidence at trial and does not meet this high bar. *See, e.g.*, *Carriger v. Stewart*, 132 F.3d 463, 477 (9th Cir. 1999) (finding that the newly discovered evidence, although vastly undercutting the evidence presented at trial, failed because it was not affirmative evidence showing petitioner's actual innocence like something that showed the petitioner was elsewhere at the time of the murder (i.e. a hotel receipt that showed defendant was in another state when the murder occurred)). This objection is overruled.

**C.     Grounds 5 and 17**

Petitioner argues that the State's need to prove intent and knowledge obligated it to inform him that it had an alternative theory of accomplice liability. (Doc. 27 at 9.) The

Court of Appeals determined there was no error in giving the accomplice liability instruction. *Felix*, 237 Ariz. at 289, ¶ 28. The R & R concurred with the PCR Court and likewise concluded that Petitioner had adequate notice of the alternative theory of accomplice liability. (Doc. 26 at 23.)

Petitioner's contentions here are repetitive and fail to persuade the Court that there has been a violation of due process or a "travesty of justice." (Doc. 27 at 9.) Petitioner merely reiterates the same allegations as he did in his initial habeas application. (*Compare* Doc. 27 at 8–9 *with* Doc. 1 at 10, 27.) "[M]erely reasserting the grounds of the petition as an objection provides this Court with no guidance as to what portions of the R&R [Felix] considers to be incorrect." *McDowell v. Richardson*, No. CV-11-0716-PHX-DGC, 2012 WL 393462, at *2 (D. Ariz. Feb. 7, 2012). As such, the Court overrules this objection.

**D.     Grounds 4, 6, and 7**

Petitioner again objects that his charges and sentences violated double jeopardy because the evidence showed that "the shooter aimed his weapon at an occupied structure, first firing into a dark, unoccupied room, and then into the center of the home." (Doc. 27 at 10.) Petitioner concludes that this evidence shows the shooter could not have targeted individual people, so the incident could not be interpreted separately, in violation of *State v. Gordon*, 161 Ariz. 308 (1989). The thrust of Petitioner's objection is that the R & R "never acknowledged that portion of Petitioner's argument." (Doc. 27 at 10.)

The *Gordon* case, decided in 1989, interpreted A.R.S. § 13-116 (the "Double Punishment" statute). *Gordon*, 161 Ariz. at 315. The *Gordon* court considered two related crimes and held that "given the entire 'transaction,' it was factually impossible to commit the ultimate crime without also committing the secondary crime. If so, then the likelihood will increase that the defendant committed a single act under A.R.S. § 13-116." A more contemporary Arizona Supreme Court case, *State v. Jones*, 235 Ariz. 501 (2014), also interpreted A.R.S. § 13-116, which defeats Petitioner's argument. It holds that where the two statutes conflict, the dangerous crimes against children sentencing provision, A.R.S. § 13-705, takes priority over A.R.S. § 13-116. *Jones*, 235 Ariz. at 502, ¶ 1. As such,

Petitioner's consecutive sentences were correctly imposed without violating double jeopardy. Moreover, under 28 U.S.C. § 2254(a), this Court can only grant habeas relief on grounds that the Petitioner is in custody in violation of the Constitution or laws of the United States—not Arizona state law. Thus, Petitioner's objection is overruled.

### E. Ground 2

Petitioner alleges that he has "provided evidence of illegal activity that the court simply refuses to acknowledge." (Doc. 27 at 11.) The Petitioner does not point to any specific evidence that he believes the R & R did not consider in great enough detail. *See* Fed. R. Civ. P. 72(b)(2) (requiring specific objections to the findings and recommendations of the magistrate judge). Moreover, as stated in the R & R, Petitioner is barred from federal review on this ground because he had full and fair opportunity to suppress the evidence in state court and he cannot claim relief for violation of another's constitutional rights. (Doc. 26 at 25–26.) Petitioner does not provide any legally persuasive reason why his claim should be considered, so his objection as to ground 2 is overruled.

### F. Grounds 8, 9, and 10

After nine full pages of analysis, the R & R concludes that the PCR Court's determination that there was no prosecutorial misconduct at trial "was not an unreasonable application of, nor contrary to, clearly established federal law" because Petitioner failed to show that any of the conduct infected the trial with unfairness so as to create a denial of due process. (Doc. 26 at 35–36.) Petitioner alleges that the R & R "makes a sweeping argument against all of Petitioner's subclaims without fully exploring each count and prosecutorial misconduct in its totality." (Doc. 27 at 11.) This Court disagrees.

First, Petitioner alleges that though the R & R concludes the drawings used at trial "were necessary to prove gang membership, the Court does not explain which elements in the drawing proved gang membership." (*Id.*) But as explained by the Court, gang membership can be inferred through "paraphernalia or photographs, tattoos, clothing or colors, or any other indicia of street gang membership." (Doc. 26 at 28 (internal quotations and alterations omitted).) Thus, the State's admission of evidence that included a drawing

of "a man with a skull for a face" with "a helmet" who "is smoking something. He is wearing a shirt, possibly a bandana hanging around his neck, and he is holding a rifle . . . like an AK-47" could be relevant to gang membership and does not constitute a due process violation. (Doc. 16-4 at 175, Ex. AA 43:23–44–4.)

Petitioner next alleges that statements regarding past weapon possession were irrelevant and inflammatory, especially because "half of the State of Arizona either owns a weapon or is eligible to purchase a weapon legally and so is capable of committing the shooting." (Doc. 27 at 11–12.) To support this argument, Petitioner cites *Martin v. Parker*, 11 F.3d 613, 613 (6th Cir. 1993). That case is inapplicable here. In *Martin*, the Defendant was compared to Adolf Hitler in the prosecutor's closing arguments and referred to as "a dictator," a "disturbed individual," and a man who has some "real problems," which the court found "create[d] overwhelming prejudice in the eyes of the jury." *Id*. Past weapon possession, where relevant, does not create the same overwhelming prejudice as comparing a Defendant to Hitler. *See id*. As to the relevance of the weapon possession, whether certain evidence is admissible under the Arizona Rules of Evidence is an issue beyond review by a habeas court. *Winzer v. Hall*, 494 F.3d 1192, 1198 (9th Cir. 2007) ("State court rulings on the admissibility of evidence generally fall outside the scope of federal habeas relief, which is designed only to remedy violations of federal law."). The Court finds no due process violation from the admission of this evidence.

Petitioner repeats his argument that the State "knew or should have known that Alexis Mireles's testimony would be hearsay, but elicited it during trial." (Doc. 27 at 12, *see also* Doc. 1 at 14.) Again, whether a statement is hearsay is not reviewable by a habeas court. *Id*. The R & R reviewed the statement for a due process violation and found that any error was cured by sustaining the objection. This Court concurs.

The Petitioner next states that he "outlined in his Rule 32 all of the misconduct by the State at closing statements" but "the Court failed to properly investigate the matter." (Doc. 27 at 12.) Petitioner does not make any specific objections to the R & R's treatment of his allegations. (*Id.*) Because Petitioner does not object to any specific portions of the

R & R, and because the Court agrees with the R & R that Petitioner did not demonstrate that "such testimony was false, or that the Government sought to draw improper inferences based on its admission," *United States v. Reyes*, 660 F.3d 454, 466 (9th Cir. 2011), the Court finds no due process violation.

As to Petitioner's perjury claims, Petitioner is not entitled to habeas relief on any of these claims. Petitioner objects to the R & R's dismissal of his perjury allegations as to Detective Frost, Deputy Jaimez, Heidy Mireles, Alexis Mireles, and Elizabeth Mireles. (Doc. 27 at 13–15.) For each of these witnesses, Petitioner claims to have proven perjury. (*Id.*) But that is not the standard.

"The knowing use of perjured testimony by a prosecutor generally requires that the conviction be set aside." *Killian v. Poole*, 282 F.3d 1204, 1208 (9th Cir. 2002) (citing *United States v. Agurs*, 427 U.S. 97, 103 (1976)). The use of perjured testimony justifies habeas relief where there is a "reasonable probability that without all the perjury the result of the proceeding would have been different." *Id.* (internal citations omitted). Petitioner here fails to prove (1) that the testimony was perjured in the first place; (2) that the prosecutor knew that the testimony was perjured; and (3) that there is a reasonable probability that the result of the proceeding would be different.

Petitioner first addresses the alleged perjury of Detective Frost, and argues that he "intentionally" made a false statement regarding the make and model of the car "to have evidence point at Petitioner," Detective Frost made a false statement to "bolster Heidy Mirels[s's] false testimony," that Petitioner could not show he was "jumped" into a gang because it was not true, and Frost made knowingly false statements regarding Heidy's cell phone because the State withheld evidence. (Doc. 27 at 13.) Petitioner provides no evidence to support any of these allegations besides bald assertions. Moreover, as stated in the R & R, a conflict of testimony between two witnesses does not create perjury, nor can a personal statement ever be perjurious. (Doc. 26 at 33.) Additionally, regarding Detective Frost's testimony that he did not recall if he recovered Heidy's cell phone, Petitioner fails to show a reasonable probability that the result of the proceeding would

have been different, especially given the Heidy's testimony that she texted the address to Petitioner. (*Id.*)

Petitioner next objects to the R &R's treatment of Deputy Jaimez's testimony. He repeats his argument regarding the contradictions between Deputy Jaimez's testimony and his report. But these contradictions do not fall under the definition of perjury, and therefore Petitioner fails to show prosecutorial misconduct.

Petitioner finally objects to the R & R's treatment of Heidy, Elizabeth, and Alexis Mireles's testimony. Petitioner's assertions are insufficient to trigger *de novo* review because he fails to point to any shortcomings in specific findings or rationale in the R & R in his objections. *Warling v. Ryan*, No. CV-13-00381-PHX-ROS, 2014 WL 5432133, at *2 (D. Ariz. Oct. 24, 2014) (holding that a general objection "has the same effect as would a failure to object"). Even if the Court were to accept Petitioner's objection, Petitioner's claims for relief as to these three witnesses do not arise under federal law. As a result, Petitioner's claims fail and his objections are overruled.

**G.     Ground 13**

The R & R analyzed three of Petitioner's claims under the standards set forth in *Brady v. Maryland*, 373 U.S. 83 (1963). (Doc. 26 at 36–38.) Petitioner raises several objections to the *Brady* analysis in the R & R. *Id.* (Doc. 27 at 15–16.) He first contends that his due process rights were violated because the "prosecution withheld evidence that could have been used to impeach testimony of key witnesses and affect credibility." (*Id.*) Petitioner cites evidence such as "[p]hotographs, flash drives, computers, etc. . . . phones and phone records, GPS devices, lab test results, etc.," "contents of seized evidence" and "the trial transcripts [of ]Theresa Mireles." (*Id.* at 15–17.)

These arguments are unavailing. The R & R contains a thorough and compelling explanation as to why each of the categories of evidence had no material value under *Brady* for Petitioner's case—an issue which Petitioner does not address. Petitioner's conclusory assertions to the contrary do not undermine this careful analysis. Notwithstanding, Petitioner presents no actual evidence that any favorable evidence was actually contained

within these items possessed by the State. *See Phillips v. Woodford*, 267 F.3d 966, 987 (9th Cir. 2001) (rejecting Brady claim based on "mere suppositions" with "absolutely no evidence" that the allegedly withheld material, if it existed, "would have contained exculpatory evidence").

Related to this objection, Petitioner raises an ineffective assistance of counsel claim. (Doc. 27 at 17.) He argues that because the R & R "has concluded that the [S]tate [in e]ffect withheld evidence. With that reasoning, [counsel] was ineffective for failing to investigate." Though the Petitioner is not specific with this objection, the Court presumes that the Petitioner is referring to blood, saliva, or DNA laboratory test results of evidence collected at the crime scene. (Doc. 26 at 37.) The State asserted that there were "no laboratory test results to disclose" because "there is no evidence or indication that [the evidence collected from the scene of the crime] was sent to a laboratory for testing." (*Id.*, citing Doc. 16 at 49.) But the record shows that the State ordered fingerprint analysis for the spent casings and DNA analysis on blood and saliva samples collected at the crime scene. (*Id.*, citing Doc. 16—2, Ex. R at 101, 125–26.) The R & R determined that "there is a permissible and reasonable inference that the samples were, at least *sent* to a lab for analysis, even if they were not ultimately analyzed—for whatever reason." (Doc. 26 at 37–38.) The R & R ultimately concluded that "even if the tests showed that Petitioner's DNA was not present on the evidence collected from the crime scene, at best, it would suggest that Petitioner may not have been the actual shooter. However, it would not vitiate the other evidence and testimony that established his culpability as an accomplice." (*Id.* at 38.)

To succeed on an ineffective assistance of counsel claim under the Sixth Amendment, Petitioner must show both deficient performance and that it caused him prejudice. First, Petitioner must show that his counsel's representation fell below an objective standard of reasonableness; and second, that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 686–88, 694 (1984). Petitioner has the

burden of proving these elements and must overcome a "strong presumption that the representation was professionally reasonable." *Id.* at 689. Additionally, "[a] habeas petitioner may not establish ineffective assistance by simply alluding to potential evidence." *United States v. Self*, 100 F. Supp. 3d 773, 803–04 (D. Ariz. 2015) (citing *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997)). A Petitioner "must adduce evidence to show what it would have been." *Id.*

Petitioner here does not meet his burden of proof. First, he merely states that his counsel "fail[ed] to investigate" but otherwise does not show that his counsel's representation fell below a reasonable standard. Second, Petitioner does not state how the results of such lab tests (if they even exist) could be exonerating, because he was found guilty as an accomplice, not a shooter. Therefore, his objection is overruled.

**H.     Ground 15**

As to his abuse of discretion grounds, Petitioner objects that the R & R "simply claims that all points presented are meritless." (Doc. 27 at 18.) He argues that any evidence obtained through search warrants is meritless. (*Id.*) But Petitioner does not make an independent argument regarding search warrants in his Ground 15 statement. (Doc. 1 at 25.) Moreover, as addressed thoroughly in the R & R and briefly above, a challenge to the validity of a search warrant is a Fourth Amendment claim, which is not cognizable in a habeas proceeding where a petitioner had "an opportunity for full and fair litigation" of the claim in state court. *Stone v. Powell*, 428 U.S. 465, 494 (1976); *see Newman v. Wengeler*, 790 F.3d 876, 878–79 (9th Cir. 2015) (holding that the *Stone* doctrine survived the passage of the AEDPA). Here, because the PCR court has already determined that Petitioner has waived his challenge to the legality of the search warrant (Doc. 16-3 at 46), his arguments to the contrary regarding the evidenced obtained from it are overruled.

**I.     Grounds 12 and 14**

Petitioner disagrees with the R & R "on all points." He first argues that the plea agreement was attached to his Rule 32 petition. The Court recognizes that the plea agreement was filed with Petitioner's petition (Doc. 1-1 at 112), but it does not change the

R & R's analysis regarding the plea deal. In his objection, Petitioner again points to nothing in the record to suggest a more favorable plea offer was under negotiation. Finally, as discussed throughout the R & R, Petitioner had constitutionally adequate notice of the State's accomplice theory of criminal liability. (Doc. 26 at 21–23, 43.)

Petitioner next objects to the R & R's conclusion that the evidence did not support a diminished capacity defense. He argues that he had a lot to drink that night, was stabbed and had lost blood. (Doc. 27 at 19.) Arizona state law does not recognize a diminished capacity defense. *State v. Richter*, 245 Ariz. 1, 4, ¶ 13 (2018). Therefore, Petitioner's ineffective assistance of counsel claim fails on this ground. *Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012) ("[W]e cannot hold counsel ineffective for failing to raise a claim that is meritless.") Finally, Petitioner objects to the R & R's conclusion regarding a GPS he claims that could contain exculpatory information on Denise Sanchez's vehicle. (*See* Doc. 27 at 19.) Petitioner provides no information besides the fact that this GPS device "could have proven that he did not commit the crime or at least supported Petitioner's defense" because it contains "global positioning information." (*Id.*) Here, the Court must presume that Petitioner's counsel's conduct in investigating this GPS device fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 685. Petitioner does not claim otherwise in his objection. (*See* Doc. 27 at 19.) Additionally, even assuming GPS evidence exists, the Court is not persuaded that it would be exculpatory. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) ("We caution . . . that tenable actual-innocence gateway pleas are rare: [A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.") (internal quotations omitted). As such, Petitioner's objection is overruled.

### J. Certificate of Appealability

Before Petitioner can appeal this Court's judgment, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b)(1). Because this Court rendered the judgment denying the Amended Petition, the Court must either issue a certificate of

appealability or state why a certificate should not issue. *See id.* A certificate may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing is made when the resolution of an issue of appeal is debatable among reasonable jurists, if courts could resolve the issues differently, or if the issue deserves further proceedings. *See Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). Upon review of the record in light of the standards for granting a certificate of appealability, the Court finds that a certificate shall not issue because dismissal of the Amended Petition is justified by a plain procedural bar and reasonable jurists would not find that procedural ruling debatable. *Id.* at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.").

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** Magistrate Judge Michael T. Morrissey's Report and Recommendation (Doc. 26) is adopted.

**IT IS FURTHER ORDERED** that Francisco Javier Felix's amended 28 U.S.C. § 2254 Petition (Doc. 5) is **dismissed with prejudice**.

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability because, for reasons explained above, Petitioner has not made a substantial showing of the denial of a constitutional right, a point on which reasonable jurists could not disagree. 28 U.S.C. § 2253(c)(2).

**IT IS FINALLY ORDERED** directing the Clerk of the Court to enter judgment terminating the case.

Dated this 14th day of October, 2021.

Michael T. Liburdi
United States District Judge